U.S. DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

---

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY, S.I. and
SHARON KEY

     Plaintiffs,                                 Case No. 0:24-cv-60921-AHS

v.

MIDEA AMERICA CORPORATION,
ELECTROLUX HOME CARE PRODUCTS, INC.,
and WHIRLPOOL CORPORATION,

     Defendants.

---

## AMENDED COMPLAINT

The plaintiffs, for their amended complaint against the above-named defendants, state:

## PARTIES

1. Plaintiff American Family Mutual Insurance Company, S.I. ("American Family") is a foreign company licensed to sell insurance in the State of Wisconsin. Its principal place of business where its officers and directors control the company's operations is located at 6000 American Parkway, Madison, Wisconsin.

2. Sharon Key ("Key") is an adult resident of the State of Kansas, residing at 426 W. Kansas Street, Apartment B, Liberty, Missouri ("Key's home").

3. Defendant Midea America Corporation ("Midea America") is a company incorporated under the laws of the State of Florida.

   a. Its principal place of business where its officers and directors control the company's operations is located at 5 Sylvan Way, Parsippany, New Jersey.

   b. Its registered agent for service of process in Florida is Corporation Service Company, 1201 Hays Street, Tallahassee, Florida.

   c. It maintains an office, and conducts regular and significant business, at 11800 NW 100th Road, Ste. 4, Medley, Florida.

4. Electrolux Home Care Products, Inc. ("Electrolux") is a company incorporated under the laws of the State of Delaware.

   a. Its principal place of business where its officers and directors control the company's operations is located at 10200 David Taylor Drive, Charlotte, North Carolina.

   b. Pursuant to Fed. R. Civ. P. 4(h), Fed. R. Civ. P. 4(e)(1), and Fla. Stat. §48.181, its registered agent for service of process in Florida is the Florida Secretary of State.

5. Whirlpool Corporation ("Whirlpool") is a company incorporated under the laws of the State of Michigan.

   a. Its principal place where its officers and directors control the company's operations is located at 2000 M63 North, Benton Harbor, Michigan.

   b. Its registered agent for service of process in Florida is Corporation Service Company, 1201 Hays Street, Tallahassee, Florida.

   c. It maintains an office, and conducts regular and significant business, at 13201 South Orange Avenue, Orlando, Florida.

**JURISDICTION AND VENUE**

6. The amount in controversy is over $75,000.00.

7. The court has subject matter jurisdiction over this matter under 28 U.S.C. §1332, because the plaintiffs reside, and/or are incorporated and maintain their principal place of business in states (Wisconsin and Kansas) diverse from the states in which the defendants are incorporated, reside and maintain their principal places of business (Florida, New Jersey, Delaware and Michigan).

8. The Court has personal jurisdiction over Midea America because it has incorporated itself in the State of Florida. "The paradigm all-purpose forums for general jurisdiction are a corporation's place of incorporation and principal place of business." *Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014).

9. The Court has personal jurisdiction over Electrolux because it has purposefully availed itself to the benefit of the laws of this judicial district by regularly transacting and/or conducting business in the State of Florida.

10. The Court has personal jurisdiction over Whirlpool because it has purposefully availed itself to the benefit of the laws of this judicial district by regularly transacting and/or conducting business in the State of Florida.

11. The Court has supplemental jurisdiction over Electrolux and Whirlpool pursuant to 28 U.S.C. § 1367(a), which directs that, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction the they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the jointer or intervention of additional parties."

12. Venue is proper pursuant to 28 U.S.C. §1391(b)(1).

## **FACTS**

13. This case arises from two fires that were caused by two defective dehumidifiers.

14. Upon information and belief, the two dehumidifiers were manufactured by Guangdong Midea Electric Co., Ltd., a Chinese company. This court does not have personal jurisdiction over Guangdong Midea Electric Co., Ltd.

15. Upon information and belief, Midea America imported the dehumidifiers into the United States and distributed them.

16. Pursuant to Fed. R. Civ. P. 8(d)(2), in the alternative, Electrolux manufactured, introduced into the stream of commerce, and/or sold one or both of the dehumidifiers.

17. Pursuant to Fed. R. Civ. P. 8(d)(2), in the alternative, Whirlpool manufactured, introduced into the stream of commerce, and/or sold one or both of the dehumidifiers.

### *The Colucci Dehumidifier*

18. One of the defective dehumidifiers was sold to Anthony and Kathleen Colucci ("the Coluccis").

19. That dehumidifier was used at the Coluccis' home, 124 Summit Avenue, Center City, Minnesota.

20. The Coluccis used the dehumidifier in a manner that was anticipated, proper, foreseeable, and consistent with all instructions and warnings that were provided to them.

21. On May 21, 2021, the dehumidifier spontaneously combusted in the Coluccis' home, causing a fire ("the Colucci fire").

22. The Colucci fire caused extensive damages to the Coluccis' home and personal property.

23. At the time of the fire, American Family had issued to the Coluccis, and there was in full force and effect, a policy of insurance that insured the Coluccis against the damages caused by the fire. Pursuant to its policy, American Family paid to, or on behalf of the Coluccis the damages caused by the fire, less any applicable deductible, and is subrogated to the rights of the Coluccis to the extent of its payments.

<em>The Key Dehumidifier</em>

24. One of the defective dehumidifiers was sold to Key.

25. That dehumidifier was used at Key's home.

26. Key used the dehumidifier in a manner that was anticipated, proper, foreseeable, and consistent with all instructions and warnings that were provided to them.

27. On May 21, 2022, the dehumidifier spontaneously combusted in Key's home, causing a fire ("the Key fire").

28. The Key fire caused extensive damages to Key's home and personal property.

29. At the time of the fire, American Family had issued to Key, and there was in full force and effect, a policy of insurance that insured Key against the damages caused by the fire. Pursuant to its policy, American Family paid to, or on behalf of Key the damages caused by the fire, less any applicable deductible, and is subrogated to the rights of Key to the extent of its payments.

<strong><u>FIRST CAUSE OF ACTION: STRICT PRODUCT LIABILITY CLAIM<br>AGAINST MIDEA AMERICA</u></strong>

30. The plaintiffs incorporate herein by reference the preceding paragraphs.

31. Midea America imported and distributed the dehumidifiers.

32. The Coluccis and Key are in the class of persons that Midea America should reasonably have foreseen as being subject to the harm caused by the defective condition of the dehumidifiers.

33. The dehumidifiers contained one or more design and/or manufacturing defects.

34. The dehumidifiers, as manufactured, deviated from their intended design.

35. The defective condition of the dehumidifiers rendered them unreasonably dangerous to the Coluccis' property and Key's property.

36. The defective condition existed at the time the dehumidifiers left the control of Midea America.

37. The dehumidifiers reached the Coluccis and Key without any material change in the condition in which they were manufactured or sold.

38. The defective condition of the dehumidifiers was the cause of the fire and the resulting damages.

39. Pursuant to Minn. Stat. §544.41(2)(3), Midea America is liable for the damages caused by the Colucci dehumidifier.

40. Pursuant to Mo. Rev. Stat. §537.762(2), Midea America is liable for the damages caused by the Key dehumidifier.

**SECOND CAUSE OF ACTION: STRICT PRODUCT LIABILITY CLAIM AGAINST ELECTROLUX**

41. The plaintiffs incorporate herein by reference the preceding paragraphs.

42. Pursuant to Fed. R. Civ. P. 8(d)(2), in the alternative, Electrolux imported and distributed the dehumidifiers.

43. The Coluccis and Key are in the class of persons that Electrolux should reasonably have foreseen as being subject to the harm caused by the defective condition of the dehumidifiers.

44. The dehumidifiers contained one or more design and/or manufacturing defects.

45. The dehumidifiers, as manufactured, deviated from their intended design.

46. The defective condition of the dehumidifiers rendered them unreasonably dangerous to the Coluccis' property and Key's property.

47. The defective condition existed at the time the dehumidifiers left the control of Electrolux.

48. The dehumidifiers reached the Coluccis and Key without any material change in the condition in which they were manufactured or sold.

49. The defective condition of the dehumidifiers were the cause of the fire and the resulting damages.

50. Pursuant to Minn. Stat. §544.41(2)(3), Electrolux is liable for the damages caused by the Colucci dehumidifier.

51. Pursuant to Mo. Rev. Stat. §537.762(2), Electrolux is liable for the damages caused by the Key dehumidifier.

## THIRD CAUSE OF ACTION: STRICT PRODUCT LIABILITY CLAIM AGAINST WHIRLPOOL

52. The plaintiffs incorporate herein by reference the preceding paragraphs.

53. Pursuant to Fed. R. Civ. P. 8(d)(2), in the alternative, Whirlpool imported and distributed the dehumidifiers.

54. The Coluccis and Key are in the class of persons that Whirlpool should reasonably have foreseen as being subject to the harm caused by the defective condition of the dehumidifiers.

55. The dehumidifiers contained one or more design and/or manufacturing defects.

56. The dehumidifiers, as manufactured, deviated from their intended design.

57. The defective condition of the dehumidifiers rendered them unreasonably dangerous to the Coluccis' property and Key's property.

58. The defective condition existed at the time the dehumidifiers left the control of Whirlpool.

59. The dehumidifiers reached the Coluccis and Key without any material change in the condition in which they were manufactured or sold.

60. The defective condition of the dehumidifiers were the cause of the fire and the resulting damages.

61. Pursuant to Minn. Stat. §544.41(2)(3), Electrolux is liable for the damages caused by the Colucci dehumidifier.

62. Pursuant to Mo. Rev. Stat. §537.762(2), Electrolux is liable for the damages caused by the Key dehumidifier.

WHEREFORE, plaintiffs demand judgment against the defendant in an amount to be determined, plus prejudgment interest, all taxable costs, fees and expenses, and all other just and equitable relief.

| | |
|---|---|
| Dated: October 23, 2024. | CHARLIP LAW GROUP L.C.<br>Attorneys for American Family Mutual<br>Insurance Company, S.I. and Sharon Key<br><br>*/s/ David H. Charlip*<br>David Charlip<br>State Bar No. 329932 |

1313 E. Robinson St.
Orlando, FL 32801
Tel. (305) 354-9313
Fax (305) 354-9314
dcharlip@charliplawgroup.com